**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 14, 2013**

# In the Court of Appeals of Georgia

A12A1864. HART v. THE STATE.                                DO-071 C

DOYLE, Presiding Judge.

Travis Demond Hart appeals the denial of his motion to quash his indictment, which charged him with three counts of sexual assault against a person in custody in violation of OCGA § 16-6-5.1 (b) (1). We affirm, for the reasons that follow.

"We begin by noting that the interpretation of a statute is a question of law, which is reviewed de novo on appeal. Because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review."[1]

---

[1] (Punctuation omitted.) *Frix v. State*, 298 Ga. App. 538, 539 (680 SE2d 582) (2009).

All three counts of Hart's indictment alleged that he engaged in sexual contact with a person he knew was a student at the high school where he was employed as "a paraprofessional . . . who taught in the special needs class and who was an assistant coach with the high school track team, the same being a teacher with supervisory and disciplinary authority." In conjunction with the motion to quash, Hart and the State entered into written stipulations, including that Hart: "was a certified [p]araprofessional [e]ducator"; "coached the high school track team and football team . . . as an assistant coach"; "was assigned to the special needs classroom [and a]s part of his job, . . . would assist the certified teacher in her daily lesson plan and roles, . . . would help children read words by reading the words to them[,] . . . would set up reading books for the week, [and] . . . would read math problems to the children"; and "had the authority to implement appropriate rules and procedural safeguards regarding the management of behaviors of individuals with exceptional learning needs." The stipulation also provided that the school principal "would testify that . . . Hart did have supervisory and disciplinary authority," but noted that Hart disputed such authority.

OCGA § 16-6-5.1 (b) (1) provides in relevant part that

[a] person who has supervisory or disciplinary authority over another individual commits sexual assault when that person . . . [i]s a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school. . . .

"In the construction of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[2]

"The ordinary, logical, and common meaning of the term"[3] "teacher" would include "a paraprofessional . . . who taught in [a high school classroom], . . . the same being a teacher with supervisory and disciplinary authority" as the indictment in this case alleges. By holding otherwise, we would contravene the legislature's intention to criminalize sexual activity between a school administrator or a school employee who teaches and a student at the school.

---

[2] (Punctuation omitted.) *Luangkhot v. State*, ___ Ga. ___, ___ (1) (Case No. S12G0895, decided Jan. 7, 2013).

[3] *Belvin v. State*, 221 Ga. App. 114, 115 (470 SE2d 497) (1996).

3

Hart argues that the trial court erred by denying his motion to quash his indictment because he is not a teacher, but a paraprofessional, and OCGA § 16-6-5.1 (b) (1) does not criminalize sexual activity by a paraprofessional with a student the paraprofessional knew was enrolled at the same school.[4] We disagree.

"Although under *Wood v. State*,[5] courts must generally refrain from expanding the scope of penal statutes by implication, we believe that holding that the indictment in the instant case sufficiently alleges that [Hart] was a [teacher] is not a judicial

---

[4] Hart relies on the fact that the Georgia Education Code separately classifies "teachers" and "paraprofessionals." See OCGA § 20-2-204 (a) (1) (defining "paraprofessional" as "a person who may have less than professional-level certification, who relates in role and function to a professional and does a portion of the professional's job or tasks under the supervision of the professional, and whose decision-making authority is limited and regulated by the professional. Such a paraprofessional shall possess the minimum of a high school diploma or a general educational development (GED) diploma."); OCGA § 20-2-1000 (a) (defining "educator" as "any principal, school administrator, teacher, guidance counselor, paraprofessional, school bus driver, volunteer assisting teachers in the classroom, tribunal members, or certificated professional personnel"). We find this argument unpersuasive. Title 20 governs the creation and regulation of Georgia's public system, and the fact that it classifies teachers and paraprofessionals separately does not require reversal in this case. The Legislature elected not to define the term teacher in OCGA § 16-6-5.1 (b), and as a result, we conclude that it intended the term in that Code section to encompass teaching generally.

[5] 219 Ga. 509, 513 (134 SE2d 8) (1963).

4

expansion of the term '[teacher]' beyond its ordinary, logical, and common meaning."[6] Accordingly, this argument has no merit.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[6] See *Belvin*, 221 Ga. App. at 115.