**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 24, 2014**

# In the Court of Appeals of Georgia

A13A2023. THE STATE v. HAMMONDS.

RAY, Judge.

The State appeals the trial court's grant of Kristen Ann Hammonds's motion to dismiss and quash the indictment, such indictment which charged Hammonds with six counts of sexual assault against a person in custody in violation of OCGA § 16-6-5.1 (b) (1). For the reasons that follow, we affirm.

"We begin by noting that the interpretation of a statute is a question of law, which is reviewed de novo on appeal. Because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review." (Citation and punctuation omitted.) *Frix v. State*, 298 Ga. App. 538, 539 (680 SE2d 582) (2009).

OCGA § 16-6-5.1 (b) (1) provides in relevant part:

A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person . . . [i]s a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school . . . .

Hammonds's indictment alleged that she engaged in sexual contact with three males that she knew were students at the high school where she was employed as an "administrator" with supervisory or disciplinary authority over the students. The record shows that Hammonds was a secretary at the school's ninth grade academy, as well as an assistant coach for the junior varsity cheerleading team. The three male students involved were between the ages of 17 and 19 years old. One was a junior and the other two were seniors, and they were not members of the cheerleading team. The sole issue in this case is whether Hammonds, as a secretary and an assistant cheerleading coach, is among the classification of individuals with supervisory or disciplinary authority subject to prosecution under OCGA § 16-6-5.1 (b) (1).

At the hearing on the motion to dismiss and quash the indictment, the school's principal testified that Hammonds's job duties as a secretary were limited to answering the telephone and performing general office and clerical work. She had no disciplinary authority over any of the students, and if she observed any misconduct

2

on the part of a student, she could only report it to one of the administrators. Although she had the authority to write up disciplinary referrals, the principal testified that "everybody on campus [had] the [authority] to do that."[1] The principal further testified that Hammonds had no supervisory authority over any students beyond the basic supervision that "[any] adult in the building" would have.[2]

The trial court granted the motion to dismiss the indictment, finding that Hammonds did not fall within the ambit of OCGA § 16-6-5.1 (b) (1). Specifically, the trial court found that Hammonds was not a teacher, a principal, an assistant principal, or an administrator at the school, and that she lacked the requisite disciplinary and supervisory authority over the students. The trial court further found that Hammonds, in her capacity as an assistant cheerleading coach, was not in a position of authority over the three students with whom she was sexually involved.

> In the construction of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary

---

[1] If Hammonds was considered an administrator simply because she could initiate a disciplinary referral, then logically an argument can be made that the same would apply to janitors or food service workers.

[2] At the hearing, Hammonds and the State stipulated that one of the students involved would testify that he perceived Hammonds to be an authority figure at the school.

3

signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.

(Citation omitted.) *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013). Furthermore, "[i]t is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning." (Citation and punctuation omitted.) *Belvin v. State*, 221 Ga. App. 114, 115 (470 SE2d 497) (1996).

According to the Merriam-Webster online dictionary,[3] an "administrator" is defined as "a person whose job is to manage a company, school, or other organization" or "one who administers especially business, school, or governmental affairs."[4] The same resource defines a "secretary" as "a person whose job is to handle records, letters, etc., for another person in an office" or "one employed to handle correspondence and manage routine and detail work for a superior."[5]

---

[3] *Merriam-Webster.com*. Merriam-Webster, n. d. Web. 31 January 2014.

[4] See http://www.merriam-webster.com/dictionary/administrator.

[5] See http://www.merriam-webster.com/dictionary/secretary.

Here, the record shows that Hammonds's job as a secretary at the school was strictly clerical in nature and, as such, did not fall within the ordinary, logical, and common definition of an "administrator." If we were to hold that a secretary is equivalent to an administrator, we would be judicially expanding the term "administrator" beyond its ordinary, logical, and common meaning for the purposes of OCGA § 16-6-5.1 (b) (1) . This we cannot do. "[C]ourts must generally refrain from expanding the scope of penal statutes by implication[.]" (Citation and punctuation omitted.) *Belvin*, supra. Compare *Hart v. State*, 319 Ga. App. 749, 750-751 (738 SE2d 331) (2013) (Interpretation of the term "teacher" in OCGA § 16-6-5.1 (b) (1) to include a "paraprofessional" who taught in a high school classroom did not constitute an impermissible judicial expansion of term "teacher" beyond its ordinary, logical, and common meaning). Under the facts and circumstances of this case, we find that Hammonds, in her secretarial position, was not an "administrator" for the purposes of prosecution under OCGA § 16-6-5.1 (b) (1).

The State also argues that Hammonds could be considered a "teacher" for the purposes of OCGA § 16-6-5.1 (b) (1) because she was an assistant cheerleading coach who helped "teach" cheerleading. We find this argument to be unpersuasive. Even if Hammonds could be considered a teacher by virtue of her position as an

5

assistant cheerleading coach, the record still shows that she lacked the requisite supervisory and disciplinary authority over the students at the school in general, and any supervisory or disciplinary responsibilities she arguably may have had as an assistant cheerleading coach would have been confined to the members of the junior varsity cheerleading team. In *Whitehead v. State*, 295 Ga. App. 562, 563-566 (1) (672 SE2d 517) (2009), we determined that the defendant, a teacher who was also a faculty advisor of the high school's academic "Quiz Bowl" team, was in a position of *direct supervisory control* over the victim, a high school student who was a member of the team. This direct supervisory control satisfied the required element to support the defendant's conviction for sexual assault against the victim, even though the defendant did not teach any classes that the victim was enrolled in at time of sexual encounters.

Here, the three male students were not members of the junior varsity cheerleading team. Hammonds had no direct supervisory or disciplinary control over them in her capacity as an assistant cheerleading coach.

Lastly, we note that OCGA § 16-6-5.1 (b) provides for the offense of sexual assault in five separate contexts: a teacher, principal, assistant principal, or other administrator at a school and a student (OCGA § 16-6-5.1 (b) (1)); an employee or

6

agent of a probation or parole office and a probationer or parolee (OCGA § 16-6-5.1 (b) (2)); an employee or agent of a law enforcement agency and a detainee or person in custody (OCGA § 16-6-5.1 (b) (3)); an employee or agent of a hospital and a patient (OCGA § 16-6-5.1 (b) (4)); and an employee or agent of a correctional facility, juvenile detention facility, facility providing services to a person with a disability, or a facility providing child welfare and youth services and any person in the custody of such facility (OCGA § 16-6-5.1 (b) (5)).

"It is a fundamental rule that courts avoid a construction of a statute that makes some language mere surplusage. Further, criminal statutes must be strictly construed against the State." (Citations and punctuation omitted.) *Hedden v. State*, 288 Ga. 871, 875 (708 SE2d 287) (2011). In OCGA § 16-6-5.1 (b) (1), the Georgia Legislature chose to specify the classification of individuals who may be prosecuted for sexual assault in the school context. In these other contexts , the Legislature provided that any "employee or agent" with supervisory or disciplinary authority may be prosecuted. See OCGA § 16-6-5.1 (b) (2) through (5). When the five components of subsection (b) of the statute are read in pari materia with each other and strictly construed, it is clear that the classification of individuals who may be prosecuted under OCGA § 16-6-5.1 (b) (1) is limited to teachers, principals, assistant principals,

or other administrators of the school.[6] Thus, a mere "employee or agent" of the school, such as Hammonds, is not subject to prosecution under OCGA § 16-6-5.1 (b) (1).

For the above reasons, the trial court did not err in dismissing the indictment.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

---

[6] Certainly, policy arguments can be made that all adults in a school setting should be subject to penalty for sexual contact with any students who attend that school. However, whether such policy should have the force of law is the job of the Legislature to so determine.