**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 25, 2015**

# In the Court of Appeals of Georgia

A14A2312. BARROW v. MIKELL.

BRANCH, Judge.

In April 2010, the Georgia Department of Driver Services ("DDS") revoked appellant Abdou Barrow's license. In June 2010 and November 2013, Barrow attempted to have his license reinstated, but DDS denied both of these requests. Within 30 days of the denial of his November 2013 application, Barrow appealed to the superior court, which dismissed the appeal as untimely. On appeal from that dismissal, Barrow argues that the trial court erred when it concluded that Barrow lost his right to appeal. We find no error and affirm.

The facts relevant to this appeal are not in dispute. Barrow, a Gambian citizen, entered the United States in 1992 and filed an application for asylum in 1997. In 1999, Barrow was ordered removed from the United States. Between 2000 and 2001,

Barrow pled guilty to a number of traffic offenses in Georgia, including hit and run. As a result, his Georgia driver's license was suspended in June 2000 and cancelled in December 2001.

Barrow was issued a new driver's license on February 25, 2009. On April 9, 2010, DDS revoked Barrow's license for what DDS termed "fraud or fictitious use of license." On April 27, 2010, Barrow applied to reinstate his license. As of that date, however, federal Immigration and Customs Enforcement ("ICE") records showed that Barrow had a warrant of removal pending against him. On June 18, 2010, DDS notified Barrow that it was "unable to complete [the] processing" of his application for reinstatement because his legal presence in the United States could not be verified. In the same notification, DDS instructed Barrow to return with "all your official documents, including all valid immigration documents," by July 13, 2010. Barrow did not do so, however, and did not appeal either the April 9 revocation or the June 18 denial of his application for reinstatement.

Almost three years later, in April 2013, Barrow learned that both his petition for asylum as well as federal removal proceedings against him had been revived. In August 2013, Barrow was apparently arrested for driving on a cancelled license. On November 13, 2013, Barrow applied at the Snellville DDS office to have his license

reinstated. During that visit, a DDS worker confirmed that Barrow's license had been "suspended" on April 9, 2010, and told Barrow that his application was denied. On November 25, 2013, DDS sent emails to Barrow's counsel again confirming that it would not reinstate Barrow's license because he was not lawfully present in the United States.

On December 2, 2013, Barrow appealed the DDS's November 2013 refusal of reinstatement. The State moved to dismiss Barrow's appeal as untimely under OCGA § 40-5-66, and the superior court granted the motion on that ground. Barrow then sought discretionary review of the superior court's decision by the Supreme Court of Georgia, arguing that the case presented a novel constitutional question as to the process due to a person denied a state driver's license as a result of a federal agency's determination that the same person was not lawfully present in the United States. The Supreme Court transferred the case to this Court on grounds including that the trial court had ruled only on the timeliness of Barrow's appeal and not on any

constitutional question.[1] We then granted Barrow's application for discretionary review of the superior court's decision.

The only question before us is thus whether Barrow's appeal from the DDS to the superior court was timely. Barrow argues that the revival of his application for asylum in March 2013 gave him the right both to apply for the reinstatement of his license in November 2013[2] and to appeal any adverse decision on that application within 30 days. We do not agree.

OCGA § 40-5-66 creates a right of appeal from "any decision" of the DDS as follows:

> (a) Except as provided in subsection (h) of Code Section 40-5-67.1 [concerning licenses suspended as a result of chemical and blood tests] and subsection (h) of Code Section 40-5-64 [concerning limited driving

---

[1] See *Ga. Bd. of Dentistry v. Pence*, 223 Ga. App. 603, 604 (1) (478 SE2d 437) (1996) (Georgia Supreme Court will not rule on a constitutional question "unless it clearly appears in the record that the trial court distinctly passed on the point") (citation and punctuation omitted). *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994) (where a trial court did not "distinctly pass or rule on" a constitutional issue, an assertion as to it on appeal "presents nothing for review by any appellate court") (citation and punctuation omitted).

[2] See, e.g., OCGA § 40-5-21.1 (a) ("an applicant who presents in person valid documentary evidence of . . . (2) [a] pending or approved application for asylum in the United States . . . may be issued a temporary license, permit, or special identification card.").

4

permits for certain offenders], *any decision* rendered by the department *shall be final unless the aggrieved person shall desire an appeal*. In such case, such person shall have the right to enter an appeal in the superior court of the county of his residence or in the Superior Court of Fulton County. *Such appeal shall name the commissioner as defendant and must be filed within 30 days from the date the department enters its decision or order*. The person filing the appeal shall not be required to post any bond nor to pay the costs in advance.

(b) . . . *No person shall be allowed to operate any vehicle in violation of any suspension or revocation by the department while any such appeal is pending.*

(Emphasis supplied.) To determine the meaning of the term "any decision" in OCGA § 40-5-66, we must

ascertain the legislature's purpose in enacting [the] statute and then construe the statute to effect that purpose, avoiding interpretations that do not square with common sense and sound reasoning. Language in one part of the statute must be interpreted in light of the legislature's intent as found in the whole statute. But if the statutory language is plain and unequivocal, then judicial construction is not only unnecessary but forbidden.

*Ins. Dept. of the State of Ga. v. St. Paul Fire & Casualty Ins. Co.*, 253 Ga. App. 551, 552-553 (559 SE2d 754) (2002) (punctuation and footnotes omitted). "[T]he

interpretation of a statute is a question of law, which is reviewed de novo on appeal. Because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review." *Hart v. State*, 319 Ga. App. 749 (738 SE2d 331) (2013) (punctuation and footnote omitted).

Barrow asserts that because the statute grants him a right of appeal from "any decision" of the DDS concerning his license, OCGA § 40-5-66 (a),[3] he has a right to appeal DDS's November 2013 denial of his request to reinstate that license, even though the original revocation occurred in April 2010. We recognize that the statutory language as to "any decision" is very broad. However, in *Earp v. Lynch*, 257 Ga. 633 (362 SE2d 55) (1987), the Supreme Court of Georgia held that notwithstanding the later expungement of the same traffic offenses that had led to the revocation of a driver's license, a driver who had failed to request reinstatement until approximately a year after the original revocation had waived his right to an appeal because "OCGA § 40-5-66 requires appeals to be made *within thirty days of the revocation decision*

_____

[3] The statute's language as to "any decision" was maintained throughout amendments made since 1987. See Ga. L. 1989, p. 14, § 40; Ga. L. 1990, p. 2048, § 4; Ga. L. 1992, p. 2564, § 4.

by the Department." Id. at 634 (emphasis supplied).[4] The instant case presents the same factual scenario. Although we recognize that Barrow did not have any grounds for appealing the initial revocation decision in 2010, we are constrained to affirm the trial court's denial of his 2013 appeal (based on a change to his immigration status) as untimely under the rationale of *Lynch*, which binds this Court. 257 Ga. at 634.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

---

[4] Although the *Lynch* Court cited *Earp v. Angel*, 257 Ga. 333 (357 SE2d 596) (1987), as controlling authority, the *Angel* appellant neither appealed his initial revocation nor applied to the DDS for reconsideration of that revocation; instead, he went directly to the habeas court for relief. Id. at 334. Nonetheless, *Lynch* concluded that the facts before it were sufficiently "similar to the facts in *Angel*" such that "our decision in that case controls here." 257 Ga. at 634 (reversing grant of habeas relief).

7