In the Supreme Court of Georgia

Decided: February 1, 2016

S15G1168. BARROW v. MIKELL et al.

BLACKWELL, Justice.

The Department of Driver Services issued a driver's license to Abdou Barrow, a Gambian national. In April 2010, the Department canceled that license, finding that Barrow was not lawfully present in the United States and was not, therefore, eligible to have a driver's license. More than three-and-a-half years later, Barrow applied for a new license, claiming that his immigration status had changed since the cancellation of his earlier license. The Department, however, denied his application. Barrow then filed a petition in the Superior Court of Fulton County, seeking judicial review of the denial of his application for a new license. The trial court dismissed his petition as untimely, and in Barrow v. Mikell, 331 Ga. App. 547 (771 SE2d 211) (2015), the Court of Appeals affirmed. We issued a writ of certiorari to review the decision of the Court of Appeals, and we now reverse.

Our statutory law permits judicial review of "any decision rendered by the [D]epartment," so long as the petition for review is filed within thirty days of the decision:

> Except as provided in subsection (h) of Code Section 40-5-67.1 and subsection (h) of Code Section 40-5-64, any decision rendered by the department shall be final unless the aggrieved person shall desire an appeal. In such case, such person shall have the right to enter an appeal in the superior court of the county of his residence or in the Superior Court of Fulton County. Such appeal shall name the commissioner as defendant and must be filed within 30 days from the date the department enters its decision or order. The person filing the appeal shall not be required to post any bond nor to pay the costs in advance.

OCGA § 40-5-66 (a).[1] The denial of an application for a driver's license most certainly amounts to "[a] decision rendered by the [D]epartment," and it is, therefore, a decision that may properly be subjected to judicial review under OCGA § 40-5-66 (a). See Johnson v. Holt, 3 Ga. 117, 119 (1847) (statutory right of appeal from "any" decision was comprehensive, permitting appeals from "all decisions," including interlocutory orders, final judgments, and discretionary decisions). See also Deal v. Coleman, 294 Ga. 170, 172 (1) (a)

---

[1] The two exceptions identified in OCGA § 40-5-66 (a) clearly do not apply here, and the Department does not contend otherwise.

2

(751 SE2d 337) (2013) ("[W]e must presume that the General Assembly meant what it said and said what it meant."). Indeed, the Department does not dispute that OCGA § 40-5-66 (a) ordinarily permits judicial review of the denial of an application for a driver's license. In this case, it is undisputed that Barrow applied for a new license in November 2013, the Department promptly denied his application, and Barrow filed his petition for judicial review within thirty days of the denial. So what's the problem?

According to the Department, Barrow was required to file his petition for judicial review within thirty days of the cancellation of his license in April 2010, and when he failed to do so, he could not revive his lost opportunity for judicial review by applying for a new license, knowing that the Department would deny that application because his license had been canceled. In support of this argument, the Department pointed the trial court and the Court of Appeals to our decisions in Earp v. Angel, 257 Ga. 333 (357 SE2d 596) (1987), and Earp v. Lynch, 257 Ga. 633 (362 SE2d 55) (1987). But upon close examination, those decisions do not support the position of the Department in this case.

In Angel, the petitioner pleaded guilty to several traffic offenses under the First Offender Act,[2] which led the Department of Public Safety[3] to classify the petitioner as a habitual violator and revoke his driver's license. See 257 Ga. at 333. The petitioner did not file any petition for judicial review within thirty days of the revocation. Instead, he waited two years, at which time he was discharged without an adjudication of guilt from the traffic offenses to which he previously had pleaded guilty. See id. at 334. The petitioner then filed a petition for a writ of habeas corpus, seeking to have his license revocation set aside, and contending that the revocation could no longer stand since he had been discharged without an adjudication of guilt from the traffic offenses on which the revocation was based. The habeas court granted the writ, and the Commissioner of Public Safety appealed. See id. We reversed the grant of the writ, concluding that the petitioner had waived his claim of error in the revocation by failing to timely seek judicial review of the revocation, and that waiver worked a procedural bar to his claim in habeas:

_____

[2] See generally OCGA § 42-8-60 et seq.

[3] Driver's licenses at that time were issued by the Department of Public Safety. That changed, however, in 2005 with the creation of the Department of Driver Services. See Ga. L. 2005, p. 334.

4

[The petitioner] failed to follow the appellate procedure available under OCGA § 40-5-66 to attack his adjudication as a habitual violator. Failure to enumerate as error on appeal *any* alleged error or deficiency stands on like footing with a failure to make timely objection in the trial court — that is, the same shall be waived. Being waived, there then exists a procedural bar to its consideration in habeas corpus proceedings, under the same circumstances as pertain to like waivers in the trial court.

Id. (citation and punctuation omitted; emphasis in original).

Lynch is another habeas case, and the factual circumstances presented in Lynch are similar to those presented in Angel. In Lynch, the petitioner was sentenced for traffic offenses under the First Offender Act, the Department of Public Safety classified him as a habitual violator and revoked his license, and the petitioner subsequently was discharged without an adjudication of guilt from the traffic offenses on which his revocation had been based. See 257 Ga. at 633. Apparently unlike the petitioner in Angel, however, the petitioner in Lynch then asked the Department of Public Safety to administratively reconsider the revocation of his license. See id. When the Department of Public Safety refused, the petitioner filed a petition for a writ of habeas corpus, seeking the same sort of relief, and asserting the same sort of claims, as the petitioner in Angel. The habeas court in Lynch granted the writ, and again, the Commissioner of Public

5

Safety appealed. See id. We reversed, holding again that the failure to seek judicial review under OCGA § 40-5-66 worked a procedural bar in habeas:

> [O]ne who wishes to contest a license revocation decision by the Department of Public Safety must follow the appellate procedure available under OCGA § 40-5-66 to attack his adjudication as a habitual violator. Further, the failure to bring a timely appeal [of an administrative decision] is a waiver of the right to appeal.

Id. at 633-634 (citation and punctuation omitted). In our opinion, we added that "OCGA § 40-5-66 requires appeals to be made within thirty days of the revocation decision by the Department of Public Safety." Id. at 634.

At the urging of the Department, the trial court and Court of Appeals in this case relied on Angel and Lynch to conclude that Barrow failed to timely file his petition for judicial review. The Court of Appeals properly acknowledged that it is bound by Angel and Lynch as precedents, and it seems to have been persuaded that those precedents apply in this case especially by our statement in Lynch that "OCGA § 40-5-66 requires appeals to be made within thirty days of the revocation decision." See Barrow, 331 Ga. App. at 549-550 (quoting Lynch). That the trial court and Court of Appeals relied in this case as they did on Angel and Lynch is understandable, but upon further reflection, we now

6

conclude that their reliance upon those precedents was misplaced for two reasons.

To begin, neither Angel nor Lynch can properly be understood as announcing any holding about the time in which a petition for judicial review under OCGA § 40-5-66 must be filed. That is precisely because *no* such petition was at issue in Angel or Lynch. In both Angel and Lynch, the petitioners filed no petition under OCGA § 40-5-66, and the petitioners attempted instead to skip right past the usual procedures for judicial review of administrative decisions and to obtain relief in habeas. It is well settled in habeas, however, that one must exhaust his other available remedies before resorting to the writ of habeas corpus for relief. See In the Matter of Stoner, 252 Ga. 397, 398 (314 SE2d 214) (1984). Anything that we said in Angel and Lynch about the timeliness of a petition under OCGA § 40-5-66 was dicta.

Moreover, there is an important distinction between Angel and Lynch, on the one hand, and this case, on the other. In both Angel and Lynch, the petitioners had their licenses *revoked*. In this case, Barrow had his license *canceled*. Our statutory law distinguishes between revocations and cancellations, and the distinction is important to the resolution of this case.

According to OCGA § 40-5-1 (16), when a license is "revoked," the "license shall not be subject to renewal or restoration," and no application for a new license can be entertained until "after the expiration of the applicable period of time prescribed in this chapter." There is no indication in Angel or Lynch that the petitioners applied for new licenses, and even if they had — assuming that the "applicable period of time" in their cases had not yet expired — their applications would have been barred as a matter of law by the revocation. Any judicial review of the denial of an application for a new license by a person barred from making such application by a prior revocation would amount, therefore, to judicial review of the revocation itself. In those circumstances, our statement in Lynch that "appeals [must] be made within thirty days of the revocation decision" is quite right.

Cancellations, however, are different. According to OCGA § 40-5-1 (3), a cancellation is "without prejudice, and application for a new license may be made at any time after such cancellation." We presume that the General Assembly meant exactly what it said when it said that cancellations are "without prejudice," see Deal, 294 Ga. at 172 (1) (a), and for that reason, the judicial review of the denial of an application for a new license following a cancellation

8

does not amount to judicial review of the cancellation itself. The cancellation and the denial of an application for a new license following cancellation are distinct decisions of the Department. As such, the failure to timely petition for judicial review of the cancellation is no absolute waiver of the right to timely petition for judicial review of the denial of the application for a new license.[4]

Here, the Department canceled — but did not revoke — the license that it had issued to Barrow.[5] Barrow was entitled by the plain terms of the statute

---

[4] The Department worries in its briefs that, if judicial review of the denial of an application for a new license following a cancellation is available, a person whose license has been canceled will be able to subject the Department to interminable judicial review: "If this Court holds that every subsequent denial of reinstatement at a [Department] office is a 'final decision' and appealable, then a licensee could go daily, weekly, or monthly to the local [Department] office, apply for reinstatement, and thus re-start the appeals clock . . . ." That worry, we think, is overblown. The availability of judicial review notwithstanding, repeated applications for reinstatement may be barred under the doctrine of res judicata, see Jordan v. Bd. of Public Safety, 253 Ga. App. 339, 342 (1) (559 SE2d 94) (2002), if the material facts have not so changed as to alter the legal rights of the applicant. See Durham v. Crawford, 196 Ga. 381, 387 (4) (26 SE2d 778) (1943); Bailey v. Hall, 267 Ga. App. 222, 223 (599 SE2d 226) (2004). In any event, our holding is based on the plain and explicit terms of the statutory law, and so, if the worry of the Department should turn out to be well founded, its worry is properly directed to the General Assembly, not this Court.

[5] We note that, in the administrative record, there are references to both the "cancellation" and "suspension" of Barrow's license. Our statutory law defines "suspensions" separately from "cancellations" and "revocations." But we need not concern ourselves with the timeliness of a petition for judicial review of the denial of an application for a new license following a suspension. On appeal, the Department has consistently represented that Barrow had his license "canceled," and our own review of the administrative record reveals that the decision of the Department is most properly characterized as a cancellation. In any event, we accept the representation of the Department that it "canceled"

9

to make an application for a new license at any time after the cancellation. He did so, and the Department denied his application. He petitioned for judicial review of that denial, and he filed his petition within thirty days of the denial. His petition was timely, and the trial court and Court of Appeals erred when they concluded otherwise.

Judgment reversed. All the Justices concur.

---

Barrow's license.