### A01A2141. JORDAN v. BOARD OF PUBLIC SAFETY.
(559 SE2d 94)

BLACKBURN, Chief Judge.

When the Georgia Board of Public Safety ("Board") terminated his employment as superintendent of the Georgia Police Academy, Bennett A. Jordan sued the Board and others for, inter alia, intentional infliction of emotional distress. After Jordan obtained a $1 million judgment against the Board, the Board successfully appealed that judgment. *Bd. of Public Safety v. Jordan*.[1] In this cross-appeal, Jordan contends that the trial court erred in determining that he was collaterally estopped from litigating the findings of fact entered by an administrative hearing officer, findings that were subsequently embraced by the Board. Jordan also claims that the trial court erred by granting the Board's motion to dismiss his claim for "a violation of his substantive due process rights based upon a liberty interest in his reputation." After review of both issues and finding them lacking in merit, we affirm.

1. Jordan contends that the trial court misapplied and misconstrued the doctrine of collateral estoppel. He claims that the trial court erred in concluding that he was barred from litigating the reasons for his discharge because the same issues were not adjudicated

---

at the administrative hearing since that hearing was limited to the eight charges lodged against him. He asserts that "[t]he Board put forth its fabricated reasons for terminating [him], selected a hearing officer, received a Recommended Decision from that hand-picked hearing officer, and then had the option of rejecting or adopting the hearing officer's Recommended Decision, as it suited them." In essence, Jordan asserts that he was denied independent review of his termination. He claims that after the trial court decided he was collaterally estopped from relitigating the hearing officer's findings of facts, he was forbidden by the trial court from asserting his innocence or uttering any refutation or challenge with regard to the charges raised against him by the Board.[2]

The trial court entered a complex ruling as to the preclusive effect of the administrative findings. The trial court ruled that the parties were precluded from relitigating those matters contained in the hearing officer's findings of fact because Jordan had been afforded "a full and fair opportunity to litigate those matters" and therefore, under the doctrine of collateral estoppel, those findings were "binding and conclusive." The trial court deemed the findings of fact "to be the equivalent of what would be an evidentiary stipulation." The trial court, however, refused to accord similar treatment to the conclusions of law contained in the hearing officer's recommended decision and adopted by the Board. The trial court observed,

> while it is clear that the specific findings were, in fact, fully and completely litigated and factual determinations were made with respect to those findings, the conclusions of law, it is not clear to this court that Mr. Jordan was provided an opportunity to present what, in effect, was the defense that assuming everything they said is true, it really isn't why they are firing me; that was pretextual. There is no ruling in Mr. Goldstein's order which was adopted by the Board which reflects that he resolved that issue; that that issue was, in fact, presented to him.

"The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." (Punctuation omitted.) *Edmondson v. Gilmore.*[3]

---

[2] Although Jordan also contends that the Board waived this defense by failing to timely raise it, the record shows that the Board asserted the collateral estoppel argument well before trial.

[3] *Edmondson v. Gilmore*, 251 Ga. App. 776, 778 (1) (554 SE2d 742) (2001).

Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

*Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*[4]

Here, the parties were the same in both actions. The charges that formed the basis for the Board's decision to terminate his employment were adjudicated at the administrative hearing. In fact, when Jordan was asked at trial, "Did you at that hearing contest or challenge the allegations that were against you?" Jordan responded, "I challenged each charge and produced the facts showing that they were wrong." The 27-page recommended decision issued by the hearing officer shows that the allegations were fully litigated. Although Jordan claims that he was not allowed to argue that the Board's reasons were pretextual, the transcript of the administrative proceeding belies that claim. Jordan tried to persuade the hearing officer that the Board had "an underlying motive" and the case involved "two levels of motive." He argued that he was being terminated as part of a reorganization plan. In these circumstances, the trial court correctly ruled that Jordan could not relitigate the factual basis for his termination. See *Swain v. State*.[5]

Moreover, despite Jordan's claim that during the trial, he was barred from denying the charges or from submitting evidence to controvert the charges, the trial transcript shows otherwise. Often over objection, Jordan was permitted to refute the specific charges in apparent contradiction to the factual findings of the hearing officer, including those relating to the IBM loaner program, the training at Jekyll Island, the staff retreat at Unicoi State Park, the competency of his deputy, and his use of fiscal restraint as to budgetary matters. Again and again, Jordan's trial testimony was directed at refuting or contradicting the specific factual findings entered by the hearing officer on each charge. At trial, Jordan offered evidence that his termination had been politically motivated to facilitate a reorganization plan and that his discharge had not been the result of any actual deficiencies or shortcomings on his part. Jordan was allowed to testify that in his 32 years of accredited service he had never had any negative employment action taken against him before 1991. Jordan

---

[4] *Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*, 273 Ga. 175, 178 (1) (538 SE2d 746) (2000).

[5] *Swain v. State*, 251 Ga. App. ·110, 113 (1) (552 SE2d 880) (2001).

testified that before the letter from the Board in 1991, he had never received any notification of any job performance deficiency from the Board and was not provided any opportunity to correct any purported deficiency. Jordan further complained that he was never told that he could not attend the conference for the International Association of Chiefs of Police. Jordan testified that others who participated in training were not similarly disciplined. Thus, notwithstanding the trial court's ruling that the factual findings of the hearing officer could not be attacked, Jordan apparently was permitted to circumvent that ruling and was allowed to offer evidence or to elicit testimony to show that his discharge had, in fact, been politically motivated and was not attributable to the eight charges brought against him by the Board that were found to be grounded in fact by the hearing officer.

When collateral estoppel applies, as here, an issue previously litigated and adjudicated on the merits cannot be relitigated even as part of a different cause of action. See *Langton v. Dept. of Corrections*.[6] Further, "questions of fact once ruled upon by an administrative body, such as the State Board of Workers' Compensation, are thereafter precluded from relitigation by the doctrines of res judicata and estoppel by judgment." *Blackwell v. Ga. Real Estate Comm.*[7] Therefore, Jordan was foreclosed from relitigating the findings of fact issued by the hearing officer and adopted by the Board.[8] See *Swain v. State*, supra.

2. Jordan contends that the trial court erred in dismissing what he describes as "a violation of his substantive due process rights based upon a liberty interest in his reputation." He claims that the trial court erred in dismissing his claim that the Board and its former vice chairman, Robert Wilson, deprived him of a constitutionally protected liberty interest.[9]

By couching his claim as "substantive" and derived from a "liberty interest," Jordan seeks to circumvent the holding of *McKinney.v.*

---

[6] *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446 (1) (469 SE2d 509) (1996).

[7] *Blackwell v. Ga. Real Estate Comm.*, 205 Ga. App. 233, 234 (421 SE2d 716) (1992).

[8] The Board argued that

Plaintiff's termination has already been fully and completely litigated and a decision upholding the termination "for cause" was rendered by the hearing officer on January 8, 1992, subsequently *adopted* by Defendant on February 5, 1992, *affirmed* by the Employee's Retirement Board on April 6, 1992, and *affirmed* by the State Personnel Board on August 17, 1992, *and not appealed by Plaintiff.*

(Emphasis in original.)

[9] Neither the Board nor Wilson in his official capacity is a "person" subject to a claim for damages under 42 USC § 1983. *Jenkins v. Dept. of Corrections*, 238 Ga. App. 336, 341 (3) (518 SE2d 730) (1999). Wilson, however, was sued individually as well as in his official capacity.

*Pate*[10] that precludes asserting a claim for a violation of a property interest in one's reputation. Nomenclature notwithstanding, the substance of a claim must be considered, and a party cannot do indirectly what the law does not allow to be done directly. *Kingsmill Village Condo. Assn. v. Homebanc Fed. Sav. Bank.*[11]

In *McKinney v. Pate*, the court held that:

> areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." [Cit.] As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural — not substantive — due process are observed.

Id. at 1556 (II) (A) (1). *McKinney* expressly found that "an allegation of pretextual firing implicates only procedural due process concerns, and does not state a substantive due process claim." *Narey v. Dean.*[12] The legal principle derived from *McKinney* and its progeny may be stated as follows:

> although damage to reputation, standing alone, does not provide a basis for an action under 42 USC § 1983 — when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983.

*Cotton v. Jackson.*[13]

Here, Jordan's procedural due process rights were adequately protected since he had notice of the administrative hearing and an opportunity to respond to the charges. The administrative hearing consumed three days and resulted in a transcript in excess of 655 pages not including exhibits. Jordan availed himself of counsel at the hearing and was allowed to call witnesses and to cross-examine the Board's, but for reasons unclear from the record, he opted not to seek judicial review of the administrative decision as authorized by OCGA § 47-2-3.[14] After failing to avail himself of judicial review of that deci-

---

[10] *McKinney v. Pate*, 20 F3d 1550 (11th Cir. 1994).

[11] *Kingsmill Village Condo. Assn. v. Homebanc Fed. Sav. Bank*, 204 Ga. App. 900, 902 (2) (a) (420 SE2d 771) (1992).

[12] *Narey v. Dean*, 32 F3d 1521, 1526 (II) (C) (11th Cir. 1994).

[13] *Cotton v. Jackson*, 216 F3d 1328, 1330 (11th Cir. 2000).

[14] Jordan testified that he did not file an appeal of what he described as a "corrupt hearing" because he was convinced that a judge "would just rubber stamp the Board."

sion, Jordan became foreclosed from asserting that his right to due process was denied. See *Cotton v. Jackson*, supra at 1331. By not taking advantage of the opportunity for state court review, Jordan could not later complain that the State deprived him of procedural due process. *Narey v. Dean*, supra at 1528. Therefore, the trial court did not err in granting the motion to dismiss.

Citing *Doe v. Garrett*,[15] Jordan also asserts that "[a] liberty interest in one's reputation or ability to gain future employment is sufficiently stated where a government employee is discharged or terminated on the basis of false and stigmatizing reasons and those reasons are publicized by the governmental employer." But a "critical element" of such a claim is the *falsity* of the government's asserted basis for its employment decision. Id. at 1463. But here, the factual findings made by the hearing officer that supported and documented each charge were admitted in evidence at trial as "binding and conclusive" and cannot now be considered false. Even if the Board had other reasons that were arbitrary, capricious, or pretextual for terminating Jordan's employment, a substantive due process claim was not thereby created. See *McKinney v. Pate*, supra at 1562-1565.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JANUARY 17, 2002 — 

*Weinstock & Scavo, Michael Weinstock, Richard J. Capriola, Jet Harris*, for appellant.

*Thurbert E. Baker, Attorney General, Gray, Hedrick & Edenfield, Bruce M. Edenfield, Evan R. Mermelstein*, for appellee.

---

[15] *Doe v. Garrett*, 903 F2d 1455, 1462-1463 (11th Cir. 1990).